UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROSALIE FLEISCHER, | ) | Case No. 1:09 CV 2925 |
| | ) | |
| Plaintiff, | ) | Judge Sarah Lioi |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | (Resolving Docket No. 1) |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Rosalie Fleischer appeals the decision of the administrative judge ("ALJ") to deny her disability insurance benefits pursuant to 42 U.S.C. 405(g). (Docket No. 1 at ¶1). Ms. Fleischer maintains that she is disabled due to fibromyalgia, common variable immune deficiency ("CVID"), degenerative disc disease, major depressive disorder and generalized anxiety disorder arising out of a car accident that occurred on February 2, 1998. (Docket No. 8 at 1; Tr. 206). Ms. Fleischer alleges she was disabled from July 18, 2001, through the last insured date of December 31, 2003.[1] (Tr. 13).

The ALJ reviewed the records of two physicians, Dr. Jennifer Kriegler and Dr. Chad Deal who are claimed by Ms. Fleischer as treating physicians.[2] Dr. Kriegler first examined Ms. Fleischer on February 10, 1998, and filled out a report for the Public Employees Retirement System of Ohio

---

[1] The alleged onset date was changed from February 1, 1998, to July 18, 2001, during the Administrative hearing. (Tr. 221-222).

[2] The ALJ reviewed records from additional physicians, however the plaintiff only raises issue with the interpretation of Dr. Deal's and Dr. Kriegler's opinions.

2

indicating Ms. Fleischer was "permanently disabled" on April 27, 1998. [3] (Tr. 207). There are no further treatment documents from Dr. Kriegler in the record.

The ALJ also reviewed the records of Dr. Deal who first saw Ms. Fleischer on June 29, 1999, and then again on February 5, 2004. (Tr. 139). There are no treatment records or references to treatment by Dr. Deal in his notes between June 29, 1999, and February 5, 2004. (Tr. 141). Dr. Deal notes Ms. Fleischer's medical issues as CVID and "myalgia." *Id*.

The ALJ found that claimant suffered from fibromyalgia, CVID, degenerative disc diseases and major depressive disorder, and was unable to perform her past work. (Tr. 14, 18). However, the ALJ also determined that

> "through the date last insured, the claimant had the residual functional capacity to perform a range of light work. Specifically, the claimant could lift, carry push and pull 20 pounds occasionally and 10 pounds frequently. She could stand walk and sit for 6 hours a day". (Tr. 15).

According to the vocational expert, who testified at the ALJ hearing, a hypothetical person with the abilities the administrative judge attributed to Ms. Fleischer would be qualified for 170,000 jobs nationally and 1,000 jobs in Ohio. (Tr. 249). When asked about a hypothetical worker with the same characteristics but who would be "off task" for 20 percent of the time the vocational expert indicated that worker would be unable to find a competitive job. [4] *Id*. Based on the first hypothetical, the ALJ found that jobs existed in "significant numbers" which plaintiff could have performed. (Tr. 18).

---

[3] Referred to as Rosalie Grainger in Dr. Kreigler's and Dr. Deal's records.

[4] Ms. Fleischer testifies that she is only able to sit in place for "15 minute stints", and presumably the second question to the vocational expert is designed to reflect that limitation. (Tr. 244; Docket No. 8 at 10)

3

*I. Claimant's Contentions:*

At issue is the January 18, 2008 administrative decision by the ALJ supporting the finding that Ms. Fleischer "was not under a disability as defined in the Social Security Act, at any time from * * * the alleged onset date, through December 31 2003, the date last insured." (Tr. 19) Ms. Fleischer raises the following issues with the ALJ's decision:

> 1: The ALJ violated the treating physician rule by disregarding and/or failing to afford sufficient weight to the opinions of two treating sources without articulating a sufficient basis
>
> 2: The ALJ failed to afford sufficient weight to the hearing testimony of the Vocational Expert, who indicated that no jobs were available for any person in Ms. Fleischer's condition.

(Docket No. 8 at 2).


*II. Standard of Review*:

Judicial review is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence, but less then a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009), *quoting Richardson v. Perales*, 402 U.S. at 401 . "The substantial-evidence standard * * * presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts." *Blakley,* 581 F.3d at 506, *quoting Mullin v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Accordingly, the Court must defer to the ALJ's determination "even if there is substantial

4

evidence in the record that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997); and *see Barker v. Shalala,* 40 F.3d 789, 794(6th Cir. 1994) noting that a court may "not inquire whether the record could support a decision the other way".

### *III. Sequential Evaluation and Meeting or Equaling the Listing of Impairments:*

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity, and then at the second step whether there is a medically severe impairment. *See* 20 CFR §404.1520(a)(4)(I) and (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1. *See* 20 C.F.R. §404.1520(a)(iii) and (d). If an impairment exists which meets the description from the listing or its equivalent, the claimant is deemed disabled at that point without consideration of age, education, or prior work experience. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *Sullivan v. Zebley,* 493 U.S. 521, 532 (1990), noting that once a claimant has met this burden that, "* * * his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can preform his prior work or other work." "At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that she is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart,* 112 Fed. Appx . 463, 467 (6th Cir. 2004); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward shifts to the Commissioner at the fifth step to demonstrate the existence of types

of employment compatible with the individual's disability. *Allen v. California,* 613 F.2d 139 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan,* 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-392.

Ms. Fleischer established that she could not perform her past relevant work. (Tr. 18). Consequently, the burden shifted to the Commissioner to demonstrate the existence of types of employment compatible with the individual's disability. *See Allen v. California,* 613 F.2d 139 (6th Cir. 1980);*Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan,* 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-392.

### *IV. The ALJ's Consideration of Dr. Kreigler's and Dr. Deal's Opinions***:**

Ms. Fleischer argues that the ALJ did not give proper weight to the opinions of Dr. Kreigler and Dr. Deal under the "treating physician" rule. (Docket No. 8 at 2). However, neither Dr. Deal nor Dr. Kreigler can be defined as a treating physician for the following reasons.

In order to receive the level of deference given to a treating physician, a medical source must meet the definition of a treating physician as established in 20 C.F.R. §404.1502. Under 20 C.F.R. §404.1502, a treating physician is defined as " * * * your own physician, psychologist or other acceptable medical source* * * " The ALJ will consider

> "* * * that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g. twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s)."

20 CFR §404.1502.

6

The Sixth Circuit has declared that "[t]he treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant * * * " *Barker v. Shalala* 40 F.3d 789,794 (6th Cir. 1994). The Sixth Circuit has also found that "* * *a plethora of decisions unanimously hold a single visit does not constitute an ongoing treatment relationship * * *," and also " * * * depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496 (6th Cir. Mich. 2006).

Neither Dr. Deal nor Dr. Kreigler had a treating relationship with Ms. Fleischer as defined by 20 CFR §404.150, *Barker,* and *Kornecky supra*. The only report we have from Dr. Kriegler's records is dated April 27, 1998, over three years before the alleged onset of disability on July 18, 2001. (Tr. 207; Tr. 221). The document shows that Ms. Fleischer had been under Dr. Kreigler's care since February 10, 1998. (Tr. 206). A treatment record of two months over three years before the alleged onset of disability in no way establishes "deeper insight into the medical condition of the claimant" for the period between July 18, 2001, and December 31, 2003. (Tr. 206-207; *Barker* at 794). Thus, the ALJ was not compelled to consider Dr. Kriegler a treating physician.

Ms. Fleischer provides one record of treatment from Dr. Deal, dated April 15, 2004. (Tr. 139) This record refers to an initial visit on June 29, 1999, and a subsequent visit on February 5, 2004. *Id*. Dr. Deal had no recorded contact with Ms. Fleicher between the onset date and the date last insured. As such, the ALJ was under no obligation to assume that Dr.

7

Deal had an intimate understanding of Ms. Fleischer's condition for the period in question. (*Barker* 40 F.3d at 794).

Additionally, the infrequency of treatment suggests Dr. Deal cannot be considered a treating physician. Ms. Fleischer went four years between visits to Dr. Deal. (Tr. 139). The courts have found that seeing a physician "five times in two years" does not entitle a doctor's opinion to be given substantial deference. *Kornecky* 167 Fed.Appx. at 507, *quoting Cunningham v. Shalala*, 880 F.Supp. 537, 551 (N.D.Ill. 1995). Additionally, while the law contains a provision allowing the "circumstances of the alleged condition" to explain an infrequent treatment schedule, neither Ms. Fleischer nor the record explains why Ms. Fleischer went almost five years between visits to her alleged treating physician. (*Id.*; Tr. 139). Therefore, the ALJ was under no obligation to give controlling deference to the opinion of Dr .Deal.

Since neither Dr. Deal nor Dr. Fleischer had a treating relationship with Ms. Fleischer. Accordingly, the ALJ was under no responsibility to give "treating" deference to the opinion of either doctor. (20 CFR §404.150). Ms. Fleischer's first statement of error should be rejected.

*V. The ALJ's Treatment of the Vocational Expert's Testimony***:**

Ms. Fleischer next contends that the ALJ did not properly take into account the testimony of the vocational expert. (Docket No. 8 at 2)

The responsibility of the reviewing court is to ensure that an ALJ's decision regarding disability is supported by substantial evidence. *Blakely,* 581 F.3d at 405. The courts have found that

8

"we cannot uphold a decision by an administrative agency * * * if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Terry v. Astrue*, 2010 WL 2572658 (N.D. Ohio, 2010), citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). Where reviewing court has failed to find this logical bridge, it has not hesitated to remand the case for further proceeding. *See Patterson v. Astrue*, 2010 WL 2232309 (N.D. Ohio 2010); *Terry*, *supra* at 20; *Cooper v. Astrue*, 2010 WL 1957417, 23-24 (N.D. Ohio 2010).

Here, the ALJ provides no logical bridge between the evidence on record and his conclusion of light work. The ALJ states that

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual capacity to perform a range of light work. Specifically, the claimant could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. She could stand, walk and sit for 6 hours a day.

(Tr. 15).

However the ALJ does not point to any specific evidence to show that Ms. Fleischer has the capacity for light work. *Id.* At no point in the record or in the hearing is Ms. Fleischer asked if she can manipulate twenty pounds. She is, in fact, unsure of her ability to lift ten pounds. (Tr. 241). In his responsive brief, the ALJ claims that Ms. Fleischer is exaggerating her pain, and that by confining her to light work he is being "* * *actually generous* * *", and is giving "* * *Plaintiff the benefit of the doubt * * * ." (Docket No. 10 at 10).  However being "generous" and "giving the benefit of the doubt" does not establish the logical bridge between the evidence on record and the conclusion of the ALJ. *Id.*  The ALJ in the instant case failed to support his residual capacity finding

with substantial evidence. As such, the information provided to the vocational expert was unsupported, and the ALJ improperly considered the vocational expert's testimony when finding "* * * that there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (Tr. 18). [5] The instant case should be remanded for reconsideration of Ms. Fleischer's residual functional capacity and determination of whether a significant number of jobs exist for her in the national economy.

*VI. Conclusion and Recommendations:*

For the foregoing reasons based on the arguments presented, the record in this matter and applicable law, the undersigned finds that the Commissioner's decision denying disability insurance benefits was not supported by substantial evidence and should be reversed and remanded for reconsideration consistent with this opinion.

/s/James S. Gallas
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).

---

[5] "In the instant case, the hypothetical question upon which the VE's testimony is based does not accurately portray Cooper's impairments; therefore, the VE's testimony cannot constitute substantial evidence that there exists a substantial number of jobs in the national economy that Cooper can perform." *Cooper,* 2010 WL 1957417

10