UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROSALIE FLEISCHER, | ) | CASE NO.1:09CV2925 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the objections to the Magistrate Judge's Report and Recommendation filed by Defendant Commissioner of Social Security (Defendant or the Commissioner).[1] (Doc. No. 12.) The Magistrate Judge submitted his Report and Recommendation (Report) (Doc. No. 11) recommending that this Court reverse the final decision of the Commissioner denying the claim of Plaintiff Rosalie Fleischer (Plaintiff) for disability benefits (DIB), under 42 U.S.C. §§ 416, 423, and supplemental security income benefits (SSI), under 42 U.S.C. § 1381 *et seq*.

Upon *de novo* review of those portions of the Report to which the Commissioner has made objection, this Court ADOPTS the Report, in part, REJECTS the Report, in part, VACATES the final decision of the Commissioner, and REMANDS the matter with instructions as set forth below.

---

[1] Plaintiff Rosalie Fleischer did not file objections to the Report.

This Court's review of the Report is governed by 28 U.S.C. § 636(b), which requires a *de novo* review as to those portions of the document to which objection is made. Because the Commissioner objected only to those portions of the Report that recommended the reversal and reconsideration of the findings of the Administrative Law Judge (ALJ) as to Plaintiff's residual functional capacity (RFC), the remainder of the Report—including its account of the factual and procedural history of the case—is hereby accepted as written.

Review of the ALJ's determination, in turn, is limited to determining whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. Appx. 516, 521 (6th Cir. 2008) (quoting *Rogers v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2007) (internal citation omitted)).

If substantial evidence supports the ALJ's findings of non-disability, that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). However, even when there is substantial evidence, "'a decision of the Commissioner will not be upheld where the

[Social Security Administration] SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). Likewise, this Court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion.)

Under the Social Security Act, a disability renders the claimant unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can result in death or that can last at least twelve months. 20 C.F.R. § 404.1505(a). Consideration of disability claims follows the familiar five step review process. 20 C.F.R. § 404.1520(a)(4). The burden of proof is on the claimant through the first four steps; the burden shifts then to the commissioner in step five. However, the claimant bears the ultimate burden of proving that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a).

**Background**

Plaintiff filed for DIB and SSI benefits on March 4, 2004. (Doc. No. 1, Compl. at ¶ 6.) Her application was denied initially and upon reconsideration. Plaintiff subsequently sought a review before the ALJ, and a hearing took place on October 8, 2007, at which time the ALJ determined that the relevant period for DIB and SSI benefits was Plaintiff's alleged onset date of July 18, 2001 through her date last insured of December 31, 2003. (TR 210, 221.)

During the hearing, the ALJ posed two hypothetical questions to Vocational Expert (VE) Kathleen Reis. In the first question, the VE was asked to consider a hypothetical worker with a high school education, who could lift 20 pounds occasionally and 10 pounds frequently, and could stand and/or sit for six hours out of the day. This individual was to be limited to simple routine work, and was also limited to superficial interaction with co-workers and the public. (TR 248.) The VE opined that there were sufficient light duty jobs in the State for such a worker. (TR 248-49.) The ALJ then posed a second question, involving a hypothetical worker who was also limited to light duty work, but who, because of fatigue and inability to maintain concentration, would also be "off task" 20 percent of the time. (TR 249.) The VE testified that such a worker would not be employable. (*Id.*)

In a decision dated January 18, 2008, the ALJ determined Plaintiff had the following severe impairments: fibromyalgia, degenerative disc disease of the cervical spine, major depressive disorder, and common variable immunodeficiency. (TR 14.) Nonetheless, the ALJ found that Plaintiff's impairments did meet the enumerated

4

impairments in Listing 1.04A. 20 C.F.R. pt. 404, supt. P. App. 1. He also determined that Plaintiff had the residual functional capacity to perform a range of light duty work. (TR 15.)

Based upon these findings, the ALJ concluded that Plaintiff was not disabled at any time during the relevant insurance period. (TR 19.) In reaching this conclusion, the ALJ reviewed the opinions offered by various physicians, and specifically rejected the opinion of Dr. Jennifer Kreiger, one of Plaintiff's proffered "treating physicians" and who opined that Plaintiff was "permanently disabled," finding that it was not supported by substantial medical signs and findings. He also rejected the opinion offered by the State Agency's physician that Plaintiff suffered from no severe physical impairments, finding that Plaintiff had severe impairments that restricted her to the light exertional level. (TR 17.) On November 4, 2009, the ALJ's decision was adopted by the Commissioner as the final decision of the Commission. (Compl. at ¶¶ 2, 6.)

In his Report, the Magistrate Judge rejected Plaintiff's argument that the ALJ failed to give sufficient weight to the opinion of Dr. Kreiger, and to that of Dr. Chad Deal, Plaintiff's other proffered "treating physician," finding that that neither doctor met the definition of a treating physician under 20 C.F.R. § 404.1502. (Report at 5-7.) He also concluded, however, that the ALJ erred by neglecting to explain his conclusion that Plaintiff, notwithstanding her severe impairments, was capable of performing light duty work. The Magistrate Judge reasoned that the ALJ failed to provide a "logical bridge between the evidence on record and his conclusion of light work." (*Id*. at 8.) He

recommended that the final decision of the Commission, adopting the decision of the ALJ, be remanded for further consideration. (*Id*. at 9.)

**Discussion**

*Treating Physician Status*

At the outset, the Court notes that neither the Commissioner, nor Plaintiff, objected to the Magistrate Judge's determination that Drs. Kreiger and Deal could not be considered "treating physicians" under 20 C.F.R. § 404.1502. By failing to object, both Plaintiff and the Commissioner waived any right to appeal on this issue. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Moreover, the Court finds that the record clearly supports the Magistrate Judge's conclusion that neither doctor was a "treating physician" under the Act. Documents before the ALJ demonstrate that Plaintiff saw Dr. Deal on two occasions: the first visit appears to have taken place on June 29, 1999 and the second visit on February 5, 2004. Both visits occurred outside the relevant insured period. (TR 139.) The only record of Dr. Krieger's treatment is the Report of Attending Physician" prepared by Dr. Krieger for the Public Employees Retirement System of Ohio. (TR 206.) The report is dated April 27, 1998, and indicates that Plaintiff had been under Dr. Krieger's care since February 10, 1998. Yet, there is no evidence that Plaintiff was seen by Dr. Krieger on any other occasion. Further, this report was prepared over three years prior to the relevant onset date of Plaintiff's alleged disability, and there is no record evidence to suggest that Plaintiff saw Dr. Krieger during the relevant insured period.

These few visits, mostly occurring outside of the relevant insured period, fail to demonstrate an "ongoing treatment relationship" necessary to establish a treating source as a "treating physician." *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 506 (6th Cir. 2006) (quoting 20 C.F.R. § 404.1502). Indeed, courts have consistently held that one, or even two or three, examinations will not suffice to establish an ongoing treatment relationship. *Kornecky*, 167 Fed. Appx. at 506-07 (collecting cases). *See, e.g., Yamin v. Comm'r of Soc. Sec.*, 67 Fed. Appx. 883, 885 (6th Cir. 2003) ("These two examinations did not give [the physician] a long term overview of the [claimant's] condition."); *Lucas v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 75385, *15 (W.D. Mich. July 6, 2010) (two visits did not establish an ongoing relationship); *Goins v. Astrue*, 2009 U.S. Dist. LEXIS 121743, *7-*8 (N.D. Ohio Nov. 20, 2009) (while the claimant maintained that he saw his physician "pretty regularly," record evidence only demonstrated that physician saw the claimant once, and this one visit was insufficient to warrant "treating physician" status).

In his solitary objection, the Commissioner takes issue with the Magistrate Judge's determination that the ALJ failed to provide a "logical bridge" to support his determination that Plaintiff could perform light duty work. The Court agrees with the Commissioner that the ALJ sufficiently explained his reasons for finding that Plaintiff could perform light duty work.  The Court, therefore, REJECTS the portion of the Report finding to the contrary. Nonetheless, the Court finds that remand is necessary because the ALJ failed to consider the only residual functional capacity assessment prepared by a medical source.

7

In rejecting the ALJ's finding that Plaintiff retained the physical residual functional capacity for light duty work, the Magistrate Judge observed that the ALJ failed to point to any specific evidence to show that Plaintiff had the capacity for light work. However, it is clear from the hearing that Plaintiff was asked numerous questions regarding her physical residual functional capacity. Specifically, Plaintiff testified that she could sit for one-half hour in an 8 hour day (TR 239), stand for one-half hour (TR 240), and walk one-half block (TR 240). She also testified that she could lift up to five pounds (TR 240), but that ten pounds "would be a little more of an issue." (TR 241.)

The ALJ acknowledged this testimony, and found that "the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms," but determined that Plaintiff had "exaggerated [the] symptoms and limitation beyond the objective medical evidence." (TR 17.) In support of this conclusion, the ALJ underscored the fact that there was no evidence in the record to suggest that prior to the last date insured Plaintiff required frequent trips to the emergency room, or any periods of hospitalization or office care by a treating source. (TR 17.) The ALJ also noted that there was no evidence of care by a visiting nurse as claimed by Plaintiff. (*Id.*) *See Blacha v. Sec. of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (claimant's failure to seek treatment undercut his claims of disabling pain).

*Plaintiff's Credibility*

"It is for the [ALJ], not a reviewing court, to make credibility findings." *Felisky*, 35 F.3d at 1036 (citing *Hardaway v. Sec. of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987)). *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir.

8

2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.") However, his credibility determination must still be supported by substantial evidence. *Harris v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 4857, *32-*33 (S.D. Ohio Jan. 19, 2011) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (internal citation omitted)). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036 (citing *Auer v. Sec. of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987)).

The ALJ was not required to accept Plaintiff's testimony as to her physical limitations, and properly set forth his reasons for finding Plaintiff incredible. In doing so, the ALJ specifically considered the statutory factors relevant to the question of credibility; such as Plaintiff's daily activities, the location, duration and intensity of the pain, medication taken to alleviate the symptoms, and any treatment sought to alleviate the pain. *See* 20 C.F.R. § 404.1529.[2] He also considered the objective medical evidence, and determined that, while it did confirm the existence of certain medical conditions, it

---

[2] In evaluating a claimant's subjective complaints of pain, adjudicators are to look to the following factors: the claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken for the purpose of alleviating the pain; treatment, other than medication, received for relief; any measures taken by the claimant to relieve the pain; and other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529. In *Duncan v. Sec. of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986), the Sixth Circuit set forth the standard for judging a claimant's credibility as such: "First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *See Felisky*, 35 F.3d at 1038-39.

did not confirm the severity of the alleged pain. While Plaintiff may not have been specifically asked if she could lift 20 pounds, it is clear that the ALJ found incredible and exaggerated her testimony that she could lift no more than 5 pounds with great difficulty. His other findings as to light duty work are also explained by his credibility determination that Plaintiff, while she had certain symptoms and limitations, had exaggerated these beyond the objective medical evidence.

*Residual Functional Capacity*

Still, the Court cannot determine if the ALJ's decision was based upon substantial evidence because the ALJ failed to consider the only residual functional capacity assessment in the record. While the responsibility for determining a claimant's residual functional capacity resides with the ALJ, *see* 20 C.F.R. §§ 404.1546(c), 416.946, "an ALJ nonetheless cannot substitute his 'medical' opinion for that of a treating or examining doctor." *Potter v. Astrue*, 2010 U.S. Dist. LEXIS 66748, *28-*29 (S.D. Ohio June 2, 2010) (citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963)). In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis. *See Bryan v. Comm'r of Soc. Sec.*, 383 Fed. Appx. 140, 148 (3d Cir. 2010) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute […] contradictory, objective medical evidence' presented to him."); *Baltazar v. Astrue*, 2011 U.S. Dist. LEXIS 4641, *22 (W.D. Ark. Jan. 18, 2011)

10

(citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009); 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2); SSR 96-8p, at *7, 1996 SSR LEXIS 5, *20 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")).

The only RFC assessment in the record was a mental residual functional capacity assessment performed on May 12, 2005 by Dr. David Dietz. (TR 172.) In his assessment, Dr. Dietz determined that Plaintiff was moderately limited in her ability to interact appropriately with the general public, and was markedly limited in her ability to complete a normal work-week without emotional interruptions. (*Id.*) In addition, Dr. Dietz found that Plaintiff had marked limitation in the areas of maintaining concentration, persistence, and pace. (TR 185.)

It would appear that the ALJ incorporated some of the limitations Dr. Dietz imposed in the second hypothetical he posed to the VE inasmuch as he proposed the consideration of a hypothetical worker with concentration issues and an inability to stay on task. Yet, the ALJ failed to even mention Dr. Deitz's assessment, let alone explain why he apparently rejected it. In light of the fact that the VE found that a worker with the mental limitations suggested by Dr. Dietz would be unemployable, the Court cannot conclude that this error was harmless. *See Bledsoe v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 11925,*14 (S.D. Ohio Feb. 8, 2011) (citing *Wilson*, 378 F.3d at 546). Ultimately, the Court finds that the omission prevents this Court from reviewing the ALJ's RFC determination, and necessitates reversal. *See, e.g.*, *Baltazar*, 2011 U.S. Dist.

LEXIS 4641, \*22 (the ALJ's failure to address a medical source's RFC assessment constituted reversible error); *Bledsoe,* 2011 U.S. Dist. LEXIS 11925, at \*14-\*15 (the ALJ's failure to address a medical source's RFC assessment deprived the court of the ability to review the decision); *Navarro v. Astrue*, 2010 U.S. Dist. LEXIS 133685, \*13 (C.D. Cal. Dec. 16, 2010) (same); *Patrick v. Astrue*, 2010 U.S. Dist. LEXIS 7716, \*39-\*40 (N.D. Ohio Jan. 29, 2010) (failure to explain reason for giving greater weight to non-examining state physician's RFC opinion precluded judicial review).

The Commissioner suggests, however, that the ALJ's determination that Plaintiff was restricted to light work was "generous," and highlights the fact that the evaluation of the State Agency's physician, Dr. Robert Norris, supports a finding that Plaintiff could perform work at any exertional level. (Doc. No. 12 at 3; TR 156.) While this may be true, the ALJ did not rely on Dr. Norris's medical opinion, and, instead, specifically rejected the agency's physician's assessment of Plaintiff's residual functional capacity, finding that Plaintiff had some restrictions. (TR 17.) Accordingly, Dr. Norris's opinion cannot constitute substantial evidence.[3] *See SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."); *Campbell v. Astrue*, 2010 U.S.

---

[3] Likewise, the Court rejects the Commissioner's argument that the VE's determination that an individual with limitations for light work can support the decision. "'Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'" *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 150 (6th Cir. 1996) (quoting *Varley v. Sec. of Health & Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987)). Still, because the ALJ failed to consider Dr. Dietz's mental RFC assessment, the Court cannot determine whether the ALJ properly discounted the VE's testimony as to the second hypothetical question.

Dist. LEXIS 59676, *28 (N.D. Ohio June 16, 2010) (citing *N.L.R.B v. Ky. River Cmty. Care, Inc*., 532 U.S. 706, 715 n.1 (2001) (counsel's *post hoc* arguments are not a substitute for the reasons supplied by the ALJ)). *See, e.g., Hook v. Astrue*, 2010 U.S. Dist. LEXIS 75321, *12-*13 (N.D. Ohio July 9, 2010) (VE's opinion, which was rejected by the ALJ, cannot support a finding of substantial evidence); *Dues v. Astrue*, 2010 U.S. Dist. LEXIS 45475, *20 (N.D. Ohio May 10, 2010) (district court must rely on actual analysis provided by the ALJ's opinion).

Ultimately, the Court concludes that the ALJ's failure to consider Dr. Deitz's mental residual functional capacity assessment deprives this Court of the ability to conduct any meaningful review. *See Bledsoe*, 2011 U.S. Dist. LEXIS 11925, at *13. *See also Wilson*, 378 F.3d at 544-46. Therefore, remand is necessary.

**Conclusion**

For all of the foregoing reasons, the Magistrate Judge's Report is ADOPTED, in part, and REJECTED, in part, the decision of the Commissioner is VACATED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

Dated: March 1, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**